UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL HOAG,<br>      Plaintiff,<br><br>      v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>      Defendant. | CIVIL ACTION<br>NO. 18-10085-TSH |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ORDER TO REVERSE THE COMMISSIONER'S DECISION (Docket No. 20) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (Docket No. 24)**
**March 31, 2021**

HILLMAN, District Judge.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") by the claimant, Paul Hoag, ("Plaintiff") for Social Security Disability Insurance Benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). An administrative law judge (ALJ) found that Plaintiff was not disabled from October 5, 2013, his alleged onset date, through February 8, 2017, the date of the decision, because he could perform light duty jobs that would accommodate his back and right arm pain. Plaintiff filed a motion for to reverse the decision of the Commissioner (Docket No 20.). The Commissioner filed a motion to affirm (Docket No. 24). For the reasons set forth below,  Plaintiff's motion is ___denied,___ and Defendant's motion is ___granted___.

---

[1] Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019. *See* Fed. R. Civ. P. 25(d).

**Discussion**[2]

The parties are familiar with the factual history of this case and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the Plaintiff.

Plaintiff was born in 1965 and was 48 years old when he allegedly became disabled in October 2013. He has a high-school education and experience working as a machinist, machine operator, and welder. He also worked briefly as an electrician after he was laid off from his last machinist job.

Plaintiff applied for Title II and Title XVI disability benefits on December 2, 2014. (AR. 65-66). He alleged disability as of October 5, 2013 due to disorders of his back and neck. (AR. 67). These claims were denied initially on June 3, 2015 and upon reconsideration on September 9, 2015. (AR. 65-66, 87-88). Plaintiff subsequently requested a hearing, which was held on November 28, 2016. (AR. 34-64). Plaintiff appeared with counsel and testified, as did a vocational expert. The administrative law judge, Judge Breton, issued an unfavorable decision on February 8, 2017. (AR. 15-27). Plaintiff appealed. (AR. 188, 297-99). On November 21, 2017, the Appeals Council denied Plaintiff's request for review of the February 8, 2017 decision, making the ALJ's decision the final decision of the Commissioner in this case. Accordingly, Plaintiff, who has now exhausted his administrative remedies, seeks judicial review by this Court pursuant to 42 U.S.C. § 405(g) and hereby submits his Motion to Reverse pursuant to Local Rule 7.1(b)(1).

---

[2] A transcript of the Social Security Administration Official Record (*"AR."*) has been filed with the court under seal. (Docket No. 14). Citations to the AR page numbers are those assigned by the agency and appear on the lower right-hand corner of each page.

*The ALJ's Decision*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2013, his alleged onset date. (AR. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: cervical radiculitis and spondylosis with a history of anterior cervical discectomy and fusion resulting in residual weakness of the right arm. (AR. 18-19). At step three, the ALJ found that Plaintiff's impairments did not meet the requirements for any impairment listed in the regulations. (AR. 19-20). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could never climb, crawl or balance; he could not work around ladders, unprotected heights, hazards, or dangerous machinery; and he could occasionally reach in all directions, and perform overhead work, using his non-dominant upper extremity. (AR. 20-21). At step four, the ALJ found that Plaintiff could not perform any past relevant work given these limitations. (AR. 23-24). At step five, the ALJ concluded that Plaintiff was not disabled because he could perform other jobs existing in significant numbers in the national economy: price marker, electronics assembler, greeter, and usher. (AR. 24-26). As part of his step-five analysis, the ALJ acknowledged Plaintiff's affidavit submitted post-hearing disputing the Vocational Expert's ("VE") testimony, but ultimately gave greater weight to Takki's testimony. (AR. 26).

## **Standard of Review**

This Court may not disturb the Commissioner's decision if it is grounded in substantial evidence. 42 U.S.C. 405(g); 1383(c)(3). Substantial evidence exists when there is sufficient evidence that a reasonable person could agree with the conclusion. *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981). Thus, this Court must uphold the

3

Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion, even if the administrative record could support multiple conclusions." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quotation marks and citation omitted).

## Discussion

Plaintiff claims that the ALJ erred in his RFC determination because he failed to consider the exertional limitations assessed by two state agency non-examining physicians. Specifically, state agency consultant physicians Drs. Ludmilla Perel and Malin Weertne wrote that Plaintiff could perform light work with pushing, pulling, and manipulative limitations to accommodate the claimant's weakened right arm," though neither specified the scope of the limitations.

The Commissioner acknowledges that the ALJ's RFC assessment does not account for these limitations, to which the ALJ gave great weight, but contends that any omission was harmless error because it has no effect on the step-five determination. Plaintiff maintains that because the ALJ failed to consider the state physicians' limitations in the RFC determination or explain why part of the opinion was not adopted, the ALJ's step five findings were not supported by substantial evidence.

*ALJ Reliance/RFC Assessment*

At the hearing, the ALJ asked the VE, Larry Takki, a series of hypothetical questions, with no objection from Plaintiff. (AR. 52). In response to the ALJ's first hypothetical, Takki testified that an individual with Plaintiff's background could not perform any of his past relevant work if he were limited to light work; could not climb, crawl, balance, or tolerate heights, ladders, hazards, or dangerous machinery; and could not perform more than occasional reaching or overhead work with the non-dominant upper extremity. (AR. 58). Takki then identified three

4

other jobs that this individual could perform: price marker, electronics assembler, and greeter. (AR. 58-59). Takki explained that although the first two of these jobs normally required frequent reaching, they could, based on his experience, be performed using the dominant arm frequently, and the non-dominant arm occasionally. (AR. 59-60). He then stated that, apart from this qualification, the jobs he had identified were "consistently performed as they're described in the DOT (the Dictionary of Occupational Titles)" (AR. 59). In response to a second hypothetical, Takki stated that the individual could not perform the price marker or electronics assembler jobs if he could not do any reaching or overhead work with the non-dominant arm. (AR. 60). He stated that the individual would still be able to perform the greeter job – as well as another job, usher, of which there were 300 jobs in Massachusetts and 16,000 nationally. *Id*.

In response to questioning from Plaintiff's counsel, Takki testified that if the individual were also limited to only occasional handling with the non-dominant hand, he could still work as a greeter, but not as a price marker or electronics assembler. (AR. 61-63). He did not address the effects of this limitation on the usher job. (*See id*.). He also stated that the usher would need to be on his feet at least six hours in an eight-hour day, but sometimes would have the option to sit on a stool. (AR. 63). At the end of Takki's testimony, Plaintiff's counsel presented Takki with several of her own hypotheticals. Plaintiff's counsel did not object to Takki or his testimony at the hearing. Plaintiff's counsel requested, and was granted, permission to submit a post-hearing statement.

Takki testified that a limitation to occasional handling with the right, non-dominant upper extremity (in addition to the other limitations identified in the ALJ's first hypothetical) would eliminate the jobs of price marker and electronics assembler (AR. 61-63). As Plaintiff also notes (Pl. Br. 5-6), Takki did not address the effects of this limitation on the usher job. But contrary to

Plaintiff's suggestion, this omission is not fatal (Pl. Br. 7-9), and the Court does not need to "speculate about how Takki would have testified with regard to the Usher job" (Pl. Br. 6). According to the DOT, the usher job requires only occasional handling. *See* DOT # 344.677-014 (Usher), 1991 WL Case 672865. Therefore, the usher job would accommodate the additional handling limitations that the state agency physicians identified. The regulations specify that a job might be classified as light based on its lifting requirements, or "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added); see also SSR 83-10, 1983 WL 31251, at *5 (1983).

The ALJ's omission of the state agency physicians' manipulative and pushing/pulling limitations from the RFC was thus harmless error, because Plaintiff would still be able to perform the usher job even if these limitations had been included. *See Bennett* v. Berryhill, 256 F. Supp. 3d 93, 98-99 (ALJ's failure to address doctor's opinion that claimant had limited standing/walking abilities harmless error where claimant still would not be disabled if limited to sedentary work).

*Post-Hearing Affidavit*

Approximately one week after his hearing, Plaintiff submitted an affidavit from another vocational counselor, David Meuse, to rebut the VE's testimony. (AR. 294-296). Mr. Meuse asserted that the VE was incorrect on many levels, including that the job of usher was outside of the parameters of the second hypothetical given and argued that the job of greeter no longer existed as a stand-alone job in the national economy. Mr. Meuse opined that the usher job was inconsistent with the ALJ's hypothetical question that precluded all reaching and overhead work with the non-dominant hand. The ALJ, however, pointed out his reasoning for crediting the

testimony of the VE, who acknowledged that his testimony was different from the DOT with respect to bilateral and unilateral manipulative functions, because it was also based on his own knowledge and experience. (AR. 60)

In crediting the testimony of the VE over that of Meuse, the ALJ relied upon the VE's knowledge, expertise and prior experience. *See Purdy*, 887 F.3d at 17. The ALJ questioned the VE at plaintiff's hearing and offered several hypothetical scenarios based on plaintiff's specific RFC. *See Arocho v. Sec'y of Health & Human Servs*., 670 F.2d 374, 375 (1st Cir. 1982) (stating vocational expert's answer to hypothetical may constitute substantial evidence only if hypothetical corresponds to plaintiff's RFC).

Finally, the plaintiff asserts that, in any event, the ALJ failed to deal with several of the issues raised by Meuse. Specifically, he argues, the ALJ ignored Meuse's opinion that "the jobs are largely no longer in existence" and, per the O*NET, are performed at the semiskilled rather than unskilled level, and he "responded only with a footnote" to Meuse's opinion that the testing scores would render him unemployable. *Id.* at 8-9.

In evaluating the competing experts, the ALJ adequately considered the fact that Takki answered questions based on his education and experience, was sworn to impartiality and was available to be cross examined by Plaintiff's counsel. Plaintiff cites to *Williams v. Saul,* 2019 WL 9244979 (D.Mass. 2019) to fault the ALJ for failing to discuss rebuttal evidence in his decision. In *Williams*, however, the only reference to rebuttal testimony was in the exhibit list accompanying the ALJ's decision. *See id*. at *6-*7. The Court concluded that it was impossible to determine whether the ALJ considered the evidence and discredited it or simply overlooked it. *Id*. at *7.

Here, in contrast, the ALJ included Meuse's opinion as an exhibit to his decision and discussed his findings before rejecting them in favor of Takki's. The ALJ's discussion of Meuse's evidence supports the conclusion that the ALJ considered and discredited such evidence. Accordingly, the ALJ applied the correct legal standard ad his rejection of the expert testimony proffered by the plaintiff post-hearing was supported by substantial evidence.

## Conclusion

For the reasons set forth above, Plaintiff's Motion to Affirm the Commissioner (Docket No. 20) is ***denied*** and Defendant's Motion for to Affirm the Commissioner (Docket No. 24) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE